MASSACHUSETTS GENERAL HOSPITAL *vs.* STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER.

*It seems*, that the Massachusetts General Hospital may maintain a bill in equity for an account of the net profits arising from the insurance of lives, one third of which the insurers are bound by law to pay to said hospital.

A defendant in equity cannot, after filing a general answer, object that the plaintiff has an adequate remedy at law.

A mutual life insurance company, which is required by its charter to pay annually to the Massachusetts General Hospital " one third of the net profits, if any, which shall have arisen from insurance on lives made during the preceding year," is liable, by virtue of *St.* 1846, *c.* 82, (if its charter was granted since the 11th of March 1831, and therefore subject, under *St.* 1830, *c.* 81, and Rev. Sts. *c.* 44, § 23, to amendment, alteration or repeal,) to pay to said hospital one third of the excess of the dividend over six per cent. annually payable to the holders of the guaranty capital actually paid in.

BILL IN EQUITY for an account of one third of the net profits made by the defendants from insurances on lives.

The bill alleged that the plaintiffs, by *St.* 1810, *c.* 94, were in-corporated, and authorized to receive grants, devises, bequests, donations and subscriptions, to be used and improved for the erection and maintenance of a general hospital for sick and insane persons; and by *St.* 1813, *c.* 158, were authorized to grant annuities on lives; that the plaintiffs, soon after the passing of said first act, received from divers persons, charitably disposed, divers grants, donations, &c., which they used for the erection and maintenance of such a hospital; and for more than twenty five years last past continued to receive into said hospital, and there to support with such donations and subscriptions, divers sick and insane persons.

The bill then set forth the incorporation of the defendants by *St.* 1844, *c.* 177, "for the purpose of making assurances on single lives, joint lives, and survivorships, and for making rever-sionary payments, on the principle of mutual contribution and mutual participation in the surplus funds, or otherwise; with all the powers and privileges, and subject to all the duties and lia-bilities, contained in thirty-seventh and forty-fourth chapters of the revised statutes, so far as the same may be applicable to this corporation;" (the second, third and fifth sections of *St.* 1844, *c.* 177, are copied in the margin;*) the organization of the de-

---

* SECTION 2. When one hundred and fifty persons have subscribed to be-come members of the said company, by being assured for one or more years, or for the whole term of life, the first meeting may be called for the purpose of organizing the corporation, but only one half of the whole number of directors shall then be chosen. Immediately after such organization, books shall be opened for the subscription of a guaranty capital of one hundred thousand dollars, to be divided into shares by the corporation thus organized; half of which shall be paid in cash, or secured as hereinafter provided for its investment, before the said cor-poration shall go into operation for the purpose of making assurances; the other half of said stock may be called for by the directors so elected, from time to time, when they deem it necessary or expedient, and shall be paid in by the holders of the stock, which shall always stand pledged to the corporation for all such as-sessments, so called for; and said stock shall be entitled to an annual dividend, not exceeding seven per centum of the amount paid in.

fendants on the 5th of April 1845 ; and that immediately after-
wards books were opened, and a guaranty capital of one hundred
thousand dollars subscribed, and divided into shares, and one
half thereof paid to the corporation in cash, or secured as
directed by said act, on or before the 1st of June 1845 ; and that
on that day they began to make assurances on single lives, joint
lives, and survivorships, in such manner and form as they were
authorized by said act to do, and had continued to make such
assurances to the present time, and had received therefor large
sums of money, and made large profits thereby.

The bill then alleged that by § 7 of said *St.* 1844, *c.* 177, it was
provided that the defendants should, on the third Monday of Jan-
uary in every year, pay over to the plaintiffs " one third of the
net profits, if any, which shall have arisen from insurance on
lives made during the preceding year ; " and by *St.* 1846, *c.* 82,
§ 1, it was enacted that " the net profits of the business of the

---

SECTION 3.  As soon as such amount of stock shall be so subscribed and paid
in, as aforesaid, or made secure, a meeting shall be called of the said stockholders,
and they shall elect, from their own number, the remaining half of the first board
of directors ; and at every future election of directors, until the guaranty stock
shall be redeemed, one half the number shall be selected from the assured, and
the other half from the stockholders, all to be chosen jointly.

SECTION 5.  At the expiration of every three years, after the expiration of the
first year, there shall be a general investigation of the affairs of the company for
the past three years, with an estimate of the surplus funds which may remain
after providing for all risks, losses, and incidental expenses.  If it shall appear,
after the investigation, that there is a surplus fund more than equivalent to the
amount of debts and claims against the funds, one third of the estimated surplus
funds and receipts shall be set aside, with its accumulations, as a reserved fund, to
be applied to the redemption of the guaranty stock ; and whenever, after the
expiration of ten years from the time of organizing the corporation, the amount
of such reserved funds shall be sufficient for the purpose, and the assured shall
vote to redeem the said guaranty stock, the same shall be redeemed.  The re-
maining two thirds of the estimated surplus fund shall be equitably divided among
the existing policies for one or more years, or for the whole term of life, in pro-
portion to the respective amounts of premium each has paid, either by single
contribution or by uniform annual contributions, and allocated to the original
sum insured, as a bonus, or reversionary addition, payable when the policy
emerges and becomes a claim.

mutual life insurance companies incorporated in this common-wealth, one third of which they are required to pay to the trustees of the Massachusetts General Hospital, shall be taken to be the excess of the dividend over six per centum annually, payable by the said companies respectively to the holders of the guaranty capital stock actually paid in; and in case the said guaranty stock shall be redeemed, the company shall continue to pay to the trustees of the said hospital the same sum annually that they would have been liable to pay if the said guaranty stock had not been redeemed;" and it was further provided that said last named act should not take effect until the plaintiffs should have expressed their assent thereto; and that the plaintiffs, by vote at a legal meeting called for the purpose, on the 18th of January 1847, did express their assent to said act.

The plaintiffs then alleged that on the third Monday of January in each year, since the defendants began to make assurances as aforesaid, they requested the defendants to make up and exhibit an account of all moneys received by them from such assurances, and of all expenses incurred, and of all their other proceedings which were necessary to show the amount of net profits which had arisen to them in every such year, and then to pay over to the plaintiffs one third of the net profits, if any, which had arisen during the preceding year; and that the defend-ants denied their liability to pay to the plaintiffs one third or any part of their profits, or to render to them any account of their proceedings.

The defendants, in their answer, admitted the other statements of the bill; but denied that they ever made any profits or net profits arising from insurances, or that they were liable to pay over any sums of money to the plaintiffs; and averred that they were a corporation formed for the purpose of making assurances on single lives, joint lives and survivorships, and for making rever-sionary payments, on the principle of mutual contribution and mutual participation in the surplus funds, or otherwise; that they were carrying out the mutual principle that the guaranty capital was for the purpose of furnishing ample security to the assured; and had paid to the holders of guaranty stock actually

paid in a dividend of seven per cent. on their stock, the first of which dividends was payable on the 1st of June 1846 ; and that the dividends paid upon the guaranty capital were not paid as profits, but were of the nature of expenses incurred in the management of the association. And the defendants referred to their act of incorporation, (the material parts of which have been already given,) and to their by-laws, adopted on the 5th of April 1845, of which the only ones necessary to be referred to in this case were those relating to " capital stock and membership," which are copied in the margin.*

*R. Newton*, for the plaintiffs.

*H. Chapin*, for the defendants. The defendants are an association of persons incorporated for the purpose of insuring each other's lives upon the mutual principle, upon terms which they accepted and acted upon as early as April 1845. The seven per cent. which they are authorized to pay upon guaranty capital is lawful interest upon that capital, and stands on the same ground as other expenses of the company. The surplus belongs to the assured members, not as profits, but as so much of the money which they put in, as was not required to pay the expenses of insuring each other's lives. There is no such thing as " net profits," in a mutual life insurance company. The clause as to " net profits " is inserted in § 7 of their charter in terms which show that it is a mere formal compliance with the stipulation in § 8 of the charter of the Massachusetts Hospital Life Insurance Company, *St*. 1817, *c*. 180, which evidently contemplated stock companies only.

The *St*. of 1846, *c*. 82, which undertakes to declare what shall be taken to be " net profits " in mutual companies, is unconsti-

---

* 1. The capital, established by law at $100,000, shall be divided into shares of fifty dollars each, and so much as is paid in shall be entitled to a dividend of seven per cent. interest annually.

2. Each holder of such stock shall be a member of the company.

3. Each recorded holder of a policy shall also be a member of the company while his policy is in force.

4. Each member shall enjoy the privileges secured to him by the charter and these regulations, and shall be liable for the losses and expenses of the company

tutional, so far as it applies to the defendants, who did not assent to it; because it attempts to compel the assured members to pay annually the sum of $166.67 more for the expense of insuring each other's lives than they were obliged by the terms of their act of incorporation to pay. *Wales* v. *Stetson*, 2 Mass. 146. *Blanchard* v. *Russell*, 13 Mass. 16. *King* v. *Dedham Bank*, 15 Mass. 454. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 507, 508. *Fletcher* v. *Peck*, 6 Cranch, 87. In fixing what were to be considered net profits as between the Massachusetts Hospital Life Insurance Company and the plaintiffs, it was considered necessary to embody in an additional act an agreement between that company and the plaintiffs. *St.* 1823, *c.* 51.

The Rev. Sts. *c.* 44, § 23, authorize only reasonable amendments in acts of incorporation passed since the 11th of March 1831. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 432. But this amendment is unreasonable.

If the plaintiffs have any rights in the premises, they have an adequate remedy at law; and therefore the bill cannot be maintained.

DEWEY, J.* It is objected to the maintenance of this bill, that the plaintiffs have a plain, adequate and complete remedy at law, if any right exists on their part to require the payment of the money demanded of the defendants. This objection, if open, would, as we think, be untenable, the case being one in which an account was properly asked for. But under the decisions of this court in the cases of *Clark* v. *Flint*, 22 Pick. 231, and *First Congregational Society in Raynham* v. *Trustees of Ministerial Fund*, 23 Pick. 148, this objection, had it existed, should have been taken earlier. The defendants filed their answer to the bill on the merits, without taking any such objection until the argument of the case. It was then too late, the court having jurisdiction of the subject matter.

The question is therefore properly before us as to the liability of the defendants to pay to the plaintiffs any sum of money as one third of the net profits that have accrued to the defendants in making insurances on lives.

* THOMAS, J. did not sit in this case

The *St.* of 1817, *c.* 180, incorporating the Massachusetts Hospital Life Insurance Company, had, with a view of aiding a public charity, required of that corporation the payment of one third of the net profits, arising from insurances on lives, to the trustees of the Massachusetts General Hospital; subject to the condition that a similar tax or contribution to this public charity should be required of all future corporations incorporated by the legislature with authority to make insurance on lives upon land. Various acts of incorporation, with such powers, have been passed by the legislature; as that of the New England Mutual Life Insurance Company, *St.* 1835, *c.* 109; the Equitable Life Assurance Society of Boston, *St.* 1844, *c.* 175; and that incorporating the defendants for the like purpose, *St.* 1844, *c.* 177; each of which acts contained a provision requiring the payment to the Massachusetts General Hospital of one third of the net profits of insurance on lives. This provision was intended to meet the condition, above referred to, in the act incorporating the Massachusetts Hospital Life Insurance Company. In terms, it certainly did; but it was not easy to apply the provision to the cases of these latter companies, as they were mutual companies, having a guaranty capital, while the Massachusetts Hospital Life Insurance Company was a stock company exclusively.

In the cases of companies having a guaranty capital, the question arises, what constitutes net profits on insurance on lives, one third of which is to be paid over to the Massachusetts General Hospital. The defendants contend that there are no net profits under their act of incorporation, to be paid over; and nothing for § 7 of that act, requiring such payment, to operate upon; the owners of the stock of the guaranty capital having, by the act, the right to receive an annual dividend not exceeding seven per cent., and the by-laws requiring that full sum to be paid annually, and the other members being a mutual company; and contend that, as respects the latter, the full amount of seven per cent. paid to the holders of the guaranty capital should be taken and estimated exclusively as expenses, and not as profits.

Great difficulty would arise as to the proper mode of giving effect to § 7 of the act of incorporation of the defendants, if the

20 *

case were to be settled upon that act alone. But the legislature have since, to remedy this difficulty, passed " an act in addition to the several acts incorporating mutual life insurance companies," *St.* 1846, *c.* 82, which in direct terms declares what shall be deemed net profits, one third of which is to be paid over to the Massachusetts General Hospital. It expressly declares that the net profits for this purpose " shall be taken to be the excess of the dividend over six per centum annually, payable by the said companies respectively to the holders of the guaranty capital stock actually paid in." This statute directly meets the case, and defines what are to be deemed net profits.

The only question is therefore whether the *St.* of 1846, *c.* 82, is a constitutional act. It is said by the defendants that this act is unconstitutional, because it violates the vested rights of the defendants acquired under their act of incorporation. If this were so, the act can have no effect. But all acts of incorporation, passed since the 11th of March 1831, which contain no express provision limiting their duration, are, by the provisions of the statutes of the Commonwealth existing from that period to the present, subject to alteration, amendment or repeal. *St.* 1830, *c.* 81. Rev. Sts. *c.* 44, § 23. The act incorporating the defendants was passed in the year 1844, long after the enactment of the revised statutes, and was of course accepted by the corporators subject to the provisions of those statutes. This seems to put at rest all further question as to the constitutionality of the *St.* of 1846, *c.* 82; and this being so, the defendants are bound by it, and must govern themselves accordingly. *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 424.

The result is therefore that this bill is maintained, and the defendants must render an account, and pay over to the plaintiffs one third of the net profits of insurance upon lives, in accordance with the requirements of *St.* 1846, *c.* 82.

*Decree accordingly*